IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-40017-01-SAC |
| | ) | |
| EBRIMA TUNKARA, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION IN LIMINE**
**RE: CIVIL FORFIETURE**

COMES NOW the Accused, Ebrima Tunkara, and asks the Court to exclude from trial any evidence of a prior civil forfeiture of cash from Mr. Tunkara.  In an FRE 404(b) notice, the government seeks to introduce testimony that "Ebrima Tunkara on 2-12-2002 had seized from him $212,757.35 by law enforcement officers of the Maryland State Police after a drug detection dog alerted on the money."  Although the government lists several theories of admissibility from the rule, the only justification given is that the "drug money" establishes that the defendant is in the business of acquiring large amount of marijuana for re-sale.

It does no such thing.  The proposed evidence is irrelevant, unfairly prejudicial, and fails to meet the requisites of FRE 404(b).

First, as to the nature of the money and the drug dog alert.  There is no information that the drug alerted to was marijuana rather than some other drugs, as unjustly presumed by the government. Second, and perhaps more important, the value of the dog sniff is negligible, particularly when used

in such an attenuated fashion as 404(b) evidence.  It is common knowledge, recognized by many courts, that most American currency contains some amount of drug residue.[1]

Second, it is no crime or wrong for an African man to have a large amount of cash, and no reliable inference of proof can be drawn from that fact.  After the seizure, there was protracted litigation about the legitimacy of the cash, as some $6,000 belonged to Mr. Tunkara related to his retail business in Atlanta, and the remainder to his brother, a Gambian businessman.  His brother filed a claim on the money, with supporting documentation about its legality.

Third, this incident is simply too attenuated to be relevant to this case.  It happened in another state two years ago; no drugs were found associated with Mr. Tunkara; the travel route was different, as was his traveling companion and the means of transportation.

Fourth, it is too prejudicial and confusing for the jury.  The allegation of large sums of money alerted by a drug dog would become a side-trial – Mr. Tunkara would be entitled to present evidence on the pervasiveness of drug residue on cash, as well as re-litigating the forfeiture case, with his brother and business records to explain the legitimacy.  It simply fails the test of FRE 403, which requires the exclusion of *relevant* evidence that is outweighed by "unfair prejudice, confusion of the

---

[1]*See, e.g.*, *U.S. v. $242,484.00 in United States Currency*, 351 F.3d 499, 511 (11th Cir. 2003) (noting that a drug dog's sniff of currency is "of little value" in determining whether the currency is used for narcotics trafficking because as much as eighty percent of all currency in circulation contains drug residue); *U.S. v. $506,231 in United States Currency*, 125 F.3d 442, 453 (7th Cir. 1997) (refusing to take seriously the results of a dog alert because a minimum of one-third – or as much as ninety-six percent – of currency in the United States is contaminated with drug residue) (citing cases and authorities); *Muhammed v. DEA*, 92 F.3d 648, 653 (8th Cir. 1996) (concluding that a dog alert is "virtually meaningless" because "an extremely high percentage of all cash in circulation in America today is contaminated with drug-residue"); *U.S. v. $5,000 in U.S. Currency*, 40 F.3d 846, 849-50 (6th Cir. 1994) (stating that the value of a dog alert is "minimal," because seventy to ninety-seven percent of currency in the United States is "so thoroughly corrupted" with cocaine contamination) (citing cases and authorities); *see also Illinois v. Caballes*, 125 S. Ct. 834, 839 (2005) (Souter, J., dissenting) (surveying judicial opinions that belie drug dogs' supposed infallibility and arguing that drug dogs often perform with "less than perfect accuracy").

issues . . . or considerations of undue delay and waste of time."  Clearly, the inference the government wishes to draw is unfairly prejudicial.  The re-litigation will also confuse the jury and waste time, detracting from the true issue at this trial – Mr. Tunkara's knowledge and participation in this crime.

Finally, it fails to meet any of the excpetions of FRE 404(b).  Fed. R. Evid. 404(b) provides, in relevant part:

> **Other crimes, wrongs, or acts.**
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident. . . .

"Motive, intent, knowledge, identity, and absence of mistake or accident" are all listed as theories of admissibility, but without any explanation of how the cash proves, say, "absence of accident," despite the fact that the government bears the burden of proof.[2]  The reason that defense files the motion is to learn the theory of admissibility and respond to the matter prior to trial.  The Tenth Circuit warned against such vague tactics as used here by the government, noting that the standard was clear:  "The government must articulate precisely the evidentiary hypothesis by which fact of consequence may be inferred from the evidence of other acts."[3]  The government has not done so, except the generalized argument that the possession of cash could defeat the defense of mere

---

[2]*U.S. v. Kendall*, 766 F2d 1426, 1437 (10th Cir. 1985); *see U.S. v. McNeill,* 2005 WL 1415567, *5 (10th Cir 2005)(unpub)(reversible error for court to admit similar drug conviction, warning, "Third, an obvious truth is that once prior convictions are introduced the trial is, for all practical purposes, completed and the guilty outcome follows as a mere formality. This is true regardless of the care and caution employed by the court in instructing the jury").

[3]*Id*. at 1436.

presence.  This cannot meet the burden imposed by FRE 404(b), nor evade the protection offered by

FRE 403.

The interplay of these rules was described by the United States Supreme Court.   The

protection from this risk of unfair prejudice is to be provided from the following four sources:

> First, from the requirement of 404(b) evidence that the evidence be
> offered for a proper purpose; second, from the relevancy requirement
> of Rule 402 – as enforced through Rule 104(b); third, from the
> assessment the trial court must make under Rule 403 to determine
> whether the probative value of similar acts evidence is substantially
> outweighed by its potential for unfair prejudice; and, four, from
> Federal Rule 105, which provides the trial court shall upon request
> instruct the jury that similar acts evidence is to be considered only for
> the purpose admitted.[4]

Here, the government has not shown a proper purpose; it fails both relevancy and the weighing under

403; and a jury instruction cannot cure either the confusion or the prejudice.

Thus, as the government bears the burden of proving admissibility, it has failed.   The

evidence should be excluded as irrelevant, unfairly prejudicial, and confusing.

Respectfully submitted,


S/Melody Evans
MELODY EVANS #17612
Assistant Federal Public Defender
   For the District of Kansas
424 South Kansas Avenue, Room 205
Topeka, Kansas 66603-3439
Phone: 785/232-9828
Fax: 785/232-9886
E-mail Address: melody_evans@fd.org
ATTORNEY FOR DEFENDANT

---

[4]*Huddleston v. U.S.*, 485 U.S. 681, 691-92 (1987).

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mr Randy M. Hendershot
Assistant United States Attorney
444 SE Quincy          Room 290
Topeka KS 66683


s/ Melody Evans